IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

DEC 0 4 2000   AM

Michael N. Milby, Clerk

| | | |
|---|---|---|
| DOUGLAS SPECTOR, ANA SPECTOR, JULIA HOLLENBECK, DAVID T. KILLOUGH and RODGER PETERS Individually and Behalf of All Similarly Situated Persons | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | C.A. NO. H-00-2649 |
| NORWEGIAN CRUISE LINE LIMITED d/b/a NORWEGIAN CRUISE LINE | § § § | |
| Defendant. | § § § | |

---

**UNITED STATES' MEMORANDUM OF LAW AS AMICUS CURIAE
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT NORWEGIAN CRUISE LINE'S
MOTION TO DISMISS**

---

#13

CutePDF - www.feeto.com

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES TO BE DECIDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      THE ADA APPLIES TO FOREIGN-FLAG CRUISE SHIPS
        WHEN THOSE SHIPS ARE IN UNITED STATES PORTS OR
        OTHER INTERNAL WATERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.      Cruise Ships Are "Places Of Public Accommodation" and Are Therefore
                Covered by the ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.      Cruise Ships Provide "Specified Public Transportation Services" . . . . . . 9

        C.      Foreign-Flag Cruise Ships Are Generally Subject To United States Laws
                When They Are In United States Ports Or Other Internal Waters . . . . . . 10

                1.      The Presumption Against Extraterritoriality Does Not
                        Apply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                2.      Application of the ADA Does Not Intrude Upon the
                        Internal Management and Affairs of Foreign-Flag
                        Vessels. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                3.      Application of the ADA to Foreign-Flag Vessels Does Not
                        Abrogate Any International Treaties. . . . . . . . . . . . . . . . . 18

        D.      The Departments of Justice and Transportation Have Determined That
                Foreign-flag Cruise Ships Are Subject to the ADA When They Are in
                United States Ports or Other Internal Waters. . . . . . . . . . . . . . . . . . . . 20

CVISPDF - www.fineto.com

II.  TITLE III'S BARRIER REMOVAL PROVISION APPLIES TO CRUISE
SHIPS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      A.  To the Extent Plaintiffs' Claims for Relief Seek Physical
Modifications, Title III's Barrier Removal Provisions Are
Applicable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      B.  The Barrier Removal Provisions Apply to Cruise Ships Even in the
Absence of New Construction and Alteration Standards for Cruise
Ships . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CVisPDF - www.fineprint.com

# TABLE OF AUTHORITIES

**CASES:**                                                                    **PAGE**

Armement Deppe, S.A. v. United States, 399 F.2d 794 (5th Cir. 1968), cert. denied, 393 U.S. 1094 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14, 22

Auer v. Robbins, 519 U.S. 452 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Benz v. Compania Naviera Hidalgo, S.A., 353 U.S.138 (1957) . . . . . . . . . . . . . . . . . . . . 12, 17

Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir.1986) . . . . . . . . . . . . . . . . . . . . . 4, 5

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) . . . . . . . 8

Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) . . . . . . . . . . . . . . . . . 4

Cunard S.S. Co. v. Mellon, 262 U.S. 100 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

Deck v. American Hawaii Cruises, Inc., 51 F.Supp.2d 1057 (D. Haw. 1999) . . . . . . . 3, 9, 25-26

Dowd v. International Longshoremen's Ass'n, 975 F.2d 779 (11th Cir. 1992) . . . . . . . . . . . . . 16

EEOC v. Arabian Am. Oil Co. (ARAMCO), 499 U.S. 244 (1991) . . . . . . . . . . . . . . . . . . . 14

EEOC v. Bermuda Star Line, Inc., 744 F. Supp.1109 (M.D. Fla. 1990) . . . . . . . . . . . . . . . . 15, 18

EEOC v. Kloster Cruise Ltd., 939 F.2d 920 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 18

Environmental Defense Fund, Inc. v. Massey, 986 F.2d 528 (D.C. Cir. 1993) . . . . . . . . 11-12, 15

Foley Bros. v. Filardo, 336 U.S. 281 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Goyette v. DCA Adver., Inc., 830 F. Supp. 737 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . 10

International Longshoremen's Local 1416 v. Ariadne Shipping Co., 397 U.S. 195 (1970) . . . . 21

Johnson v. Gambrinus Company/Spoetzl Brewery, 116 F.3d 1052, 1060 (5th Cir. 1997) . . . . . . 8

Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Lauritzen v. Larsen, 345 U.S. 571 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Leisnoi, Inc. v. Stratman, 154 F.3d 1062 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Mali v. Keeper of the Common Jail, 120 U.S. 1 (1887) . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 17

McLean v. Crabtree, 173 F.3d 1176 (9th Cir. 1999), cert. denied, 120 S.Ct. 814 (2000) . . . . . . . 8

McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10 (1963) . . . . . . 16-18

Morton v. Mancari, 417 U.S. 535 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Murray v. The Schooner Charming Betsy, 6 U.S. (2 Cranch) 64 (1804) . . . . . . . . . . . . . . . . . . 18

NLRB v. Dredge Operators, Inc. 19 F.3d 206 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . 13, 19

Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206 (1998) . . . . . . . . . . . . . . . . . . . . . 22

Posadas v. National City Bank, 296 U.S. 497 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

Stevens v. Premier Cruise Lines, 215 F.3d 1237 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . passim

Thomas Jefferson Univ. v. Shalala, 512 U.S. 504 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Louisiana, 470 U.S. 93 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Louisiana, 394 U.S. 11, 40 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Royal Caribbean Cruises, Ltd., 11 F.Supp.2d 1358 (S.D.Fla. 1998) . . . . . . . . 22

Walker v. Carnival Cruise Lines, Case No. C 98-2926 (N.D. Cal. 1998) . . . . . . . . . . . . . . . 3, 9

Ward v. W & H Voortman, Ltd., 685 F. Supp. 231 (M.D. Ala. 1988) . . . . . . . . . . . . . . . . . . . . 11

Windward Shipping Ltd. v. American Radio Ass'n, 415 U.S. 104 (1974) . . . . . . . . . . . . . . . . 16

**STATUTES:**

Title III of the Americans With Disabilities Act (ADA), 42 U.S.C. §§12181-12189 . . . . . passim

National Labor Relations Act (NLRA), 29 U.S.C. §151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## RULES AND REGULATIONS:

28 C.F.R. Pt. 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
49 C.F.R. Pt. 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

56 Fed. Reg. 45,584 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## MISCELLANEOUS:

ADA Title III Technical Assistance Manual and 1994 Supplement . . . . . . . . . . . . . . . . . . passim

ADA Legislative History

    S. Rep. No. 116, 101st Cong., 1st Sess. 65-66 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 109-110 (1990) . . . . . . . . . . . . . . . . . . 23

5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure
    § 1357, at 601 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Craig Allen, Federalism in the Era of International Standards (Part II),
    29 J. Mar. L. & Com. 565 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

Convention on the High Seas, April 29, 1958
    T.I.A.S. No. 5200, 450 U.N.T.S. 82 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

International Convention for the Safety of Life at Sea (SOLAS)
    (Consolidated Ed. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21, 24

President's Ocean Policy Statement
    19 Weekly Comp. Pres. Doc. 383 (Mar. 10, 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Restatement (Third) of the Foreign Relations Law of the United States
    § 501 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United Nations Convention on the Law of the Sea, Dec. 10, 1982,
    21 I.L.M 1261 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20

# INTRODUCTION

The questions presented here are (1) whether Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§12181-12189, applies to foreign-flag cruise ships that do business in the United States and (2) whether cruise ships are subject to the ADA's requirement for barrier removal.

The answer to the first question will determine whether it is unlawful for cruise ships to discriminate against people on the basis of disability in any of the various ways prohibited by Title III. Thus, it will determine whether cruise ships may impose unnecessary eligibility criteria for the purpose of screening out passengers who have disabilities, or whether they may simply deny boarding outright to persons with disabilities. 42 U.S.C. §12182(a), §12182(b)(2). It will determine whether cruise ships may treat passengers with disabilities differently from other passengers, by, for example, charging higher prices or requiring all persons with disabilities to travel with a companion. 42 U.S.C. §12182(b)(1)(A). It will determine whether cruise ships may refuse to reasonably modify the manner in which they provide their services and amenities in order to afford passengers with disabilities a fair opportunity to participate in and benefit from their cruise experience. 42 U.S.C. §12182(b)(2).

The ADA is a comprehensive federal civil rights statute established to protect the rights of the disabled. This case concerns Title III of the ADA, 42 U.S.C. §§ 12181 through 12189, which prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. §12182(a). Pursuant to Title III of ADA, owners and operators of public facilities are required to remove architectural barriers to the extent such removal is readily

-1-

CUtePDF - www.fasoto.com

achievable (42 U.S.C. 12182(b)(2)(A)(iv)); make reasonable modifications to policies, practices, or procedures, unless doing so would "fundamentally alter" the nature of the services offered (42 U.S.C. 12182(b)(2)(A)(ii)); and design and construct new facilities such that they are readily accessible to and usable by individuals with disabilities (42 U.S.C. § 12183).

Plaintiffs Douglas Spector, Julia Hollenbeck, and Rodger Peters are persons with mobility impairments who recently participated in cruises aboard the "Norwegian Sea" and/or "Norwegian Star," ships owned and operated by Defendant Norwegian Cruise Line ("NCL"). Plaintiffs allege that areas of these ships accessible to the general public were not accessible to individuals with mobility impairments, and as a result, Plaintiffs were denied access to many of the ships' programs, services, and facilities. See Plaintiffs' First Amended Original Complaint ("Complaint"), ¶¶ 17, 31. Plaintiffs therefore allege that NCL has failed to remove architectural barriers in existing facilities or offer services in alternative settings when it was readily achievable to do so. 42 U.S.C. 12182(b)(2)(A)(iv).

Plaintiffs further allege that NCL charged Plaintiffs higher fares than passengers without disabilities, required payment of illegal surcharges for accessible features and/or accommodations, and failed to have appropriate plans and assistance to safely evacuate persons with mobility impairments in case of emergency. Id. at ¶¶ 17, 19, 33. Plaintiffs therefore allege that NCL has failed to make reasonable modifications to its policies, practices, or procedures. 42 U.S.C. 12182(b)(2)(A)(ii).

NCL has filed a motion to dismiss in this case on the broad ground that Title III of the ADA, as a matter of law, is inapplicable to foreign-flag cruise ships. According to NCL, a cruise ship is governed only by the laws of its flag, regardless of where it sails, and regardless of the

nature of the dispute at issue. The United States respectfully submits that this position is unsupportable. It has already been rejected by the Eleventh Circuit in <u>Stevens v. Premier Cruise Lines</u>, 215 F.3d 1237, 1241 (11th Cir. 2000) (cruise ships sailing under a foreign flag are not exempt from the ADA when operating in United States waters).[1] Moreover, the long-standing, official position of the United States Departments of Justice and Transportation is that cruise ships operating in United States ports and internal waters are subject to all generally applicable federal laws, including Title III of the ADA. As demonstrated by the arguments below, the United States' position on this matter is supported by relevant Supreme Court and Fifth Circuit case law.

NCL further argues that in the absence of federal regulations governing new construction and alterations of cruise ships, no relief can be granted in the instant case. Again, the United States respectfully disagrees with NCL's position. The Plaintiffs in the instant case make no claims for relief pursuant to the new construction and alteration provisions of Title III, and thus the absence of new construction and alteration standards is irrelevant. Rather, Plaintiffs in the instant case raise claims pursuant to other nondiscrimination and equal opportunity provisions of Title III. 42 U.S.C. §12182. Thus, to the extent Plaintiffs' claims specifically seek physical modifications, Title III's barrier removal provisions are applicable. 42 U.S.C. §12182(b)(2)(A)(iv).

Furthermore, NCL has not satisfied its burden for dismissing the complaint. A motion to

---

[1] <u>See</u> <u>also</u> <u>Walker v. Carnival Cruise Lines</u>, Case No. C 98-2926 (N.D. Cal. Nov. 22, 2000) (Judge Thelton Henderson) (denying cruise ship's motion for summary judgement and ruling that foreign flag ships are covered by Title III of the ADA); <u>Deck v. American Hawaii Cruises, Inc.</u>, 51 F.Supp.2d 1057, 1061 (D. Haw. 1999).

dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." <u>Kaiser Aluminum &</u>

<u>Chem. Sales v. Avondale Shipyards</u>, 677 F.2d 1045, 1050 (5th Cir.1982).  The complaint must

be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be

taken as true.  <u>Campbell v. Wells Fargo Bank</u>, 781 F.2d 440, 442 (5th Cir.1986).  A district court

may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v.</u>

<u>Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  This strict standard of review

under rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the

light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint

states any valid claim for relief."  5 Charles A. Wright & Arthur R. Miller, Federal Practice and

Procedure § 1357, at 601 (1969).

Thus, because the provisions of Title III (and the associated regulations) relevant to

Plaintiffs' complaint do in fact apply to foreign-flag cruise ships operating in domestic ports and

waters, and to removal of physical barriers in cruise ships, and because any doubts about these

issues should be resolved in Plaintiffs' favor, Plaintiffs have successfully stated claims upon

which relief can be granted, and Defendant's motion to dismiss should be denied.  Moreover, a

finding that Title III does not apply to cruise ships sailing in United States waters would not only

contravene clear and unambiguous Supreme Court precedent, it would deprive persons with

disabilities of the only basis they have under federal law to challenge <u>any</u> of the many different

kinds of discrimination on the basis of disability with respect to cruise ships.  Such a restrictive

interpretation of the ADA's coverage would have an unnecessarily harsh and potentially far-

reaching effect on the legal rights of people with disabilities in the United States.

## ISSUES TO BE DECIDED[2]

1.    Whether Title III of the ADA applies to foreign-flag cruise ships that do business in United States ports and internal waters.

2.    Whether Title III's barrier removal provisions are applicable to Plaintiffs' claims seeking physical modifications.

## RELEVANT FACTS[3]

1.  Plaintiffs Douglas Spector, Julia Hollenbeck, and Rodger Peters (hereinafter and collectively, "Plaintiffs") are persons with disabilities within the meaning of the ADA.  Plaintiff Douglas Spector has a physical disability that requires him to utilize an electric scooter for mobility.  Plaintiffs Julia Hollenbeck and Rodger Peters have physical disabilities that require them to utilize a wheelchair for mobility.  During August and September of 1999, Plaintiffs and their families each participated in a cruise aboard the "Norwegian Sea" and/or "Norwegian Star;" cruise ships that sail regularly to and from the Port of Houston.  Areas of the ship accessible to the general public on the Norwegian Sea and Norwegian Star were inaccessible to Plaintiffs during their August and September 1999 cruises.  As a result, Plaintiffs were denied access to many of the programs, services, and facilities provided by the defendant to patrons without disabilities.

2.  The Norwegian Sea and Norwegian Star cruise ships, currently registered in the

---

[2] This Memorandum will not address Plaintiffs' separate claim of discrimination on the basis of association with a person with a disability.

[3] The summary of facts provided is taken directly from Plaintiffs' First Amended Original Complaint.  For the purposes of deciding NCL's motion to dismiss, the Court must consider all facts plead by Plaintiffs as true.  Campbell, 781 F.2d at 442.

Bahamas, are owned and operated by Norwegian Cruise Limited d/b/a Norwegian Cruise Lines (hereinafter and collectively, "NCL"). Although NCL is incorporated in Bermuda, it has its principal place of business in Florida. NCL's Brief, p. 7. As an integral part of the cruise experience, NCL's cruise ships, including the "Norwegian Sea" and the "Norwegian Star," offer numerous types of services and amenities to their passengers, including but not limited to lodging, restaurants, bars, coffee shops, retail stores, Broadway-style shows, movie theaters, social activities, computer rooms, gyms, health spas, swimming pools and hot tubs, gaming casinos and arcades, arrangements for "shore excursions" and day care facilities.

3.  On July 3, 2000, Plaintiffs filed suit against NCL in this Court, alleging various violations of the ADA. Plaintiffs allege that NCL violated several of the non-discrimination and equal opportunity provisions in Title III of the ADA, including: (1) discrimination against individuals with disabilities "in the full and equal enjoyment of the [cruise ship's] goods, services, facilities, privileges, advantages, or accommodations" (42 U.S.C. §12182); (2) use of standards or criteria or methods of administration that had the effect of discriminating on the basis of disability, and that perpetuated such discrimination by others subject to common administrative control (42 U.S.C. §12182 (b)(1)(D)); (3) imposition or application of eligibility criteria that screen out, or tend to screen out, individuals with disabilities from fully and equally enjoying the Defendant's services, facilities, privileges, advantages, or accommodations – including unlawfully charging the Plaintiffs higher fares than passengers without disabilities and allowing or requiring Plaintiffs to pay other illegal surcharges for accessible features and/or accommodations (42 U.S.C. §12182(b)(2)(A)(i) and 28 C.F.R. 36.301(c)); (4) failure to make reasonable modifications in policies, practices or procedures when such modifications are

necessary to afford [the cruise ship's] goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities (42 U.S.C. §12182(b)(2)(A)(ii)); and (5) failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities. . . where such removal is readily achievable (42 U.S.C. §12182(b)(2)(A)(iv)).

## ARGUMENT

**I.     THE ADA APPLIES TO FOREIGN-FLAG CRUISE SHIPS WHEN THOSE SHIPS ARE IN UNITED STATES PORTS OR OTHER INTERNAL WATERS**

### A.     Cruise Ships Are "Places Of Public Accommodation" and Are Therefore Covered by the ADA

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."  42 U.S.C. §12182(a).  A "place of public accommodation" is defined as a facility, operated by a private entity, whose operations affect commerce and fall within one or more of the 12 broad categories of facilities listed in the statute.  See 42 U.S.C. §12181(7).  These categories include, inter alia, places of lodging, establishments serving food or drink, places of exhibition or entertainment, sales establishments, service establishments, and places of exercise or recreation.  Id.

The Department of Justice has determined that a cruise ship is a place of public accommodation, and is therefore subject to Title III of the ADA.  28 C.F.R. Pt. 36, App. B at 587 (finding "places of public accommodation operated in mobile facilities, such as cruise ships...[to be] covered under this part, and...included in the definition of 'facility.'"); Title III Technical Assistance Manual III-1.2000(D) (1994 Supp.).  Cruise ships, which typically contain many if not

all of these kinds of establishments, function as one or more of the types of places of public

accommodations enumerated in 42 U.S.C. §12181(7).  As the Department of Transportation

cogently observed, making its own determination that cruise ships are places of public

accommodation, "[c]ruise ships are self-contained floating communities." 56 Fed. Reg. 45,584,

45,600 (1991).  "In addition to transporting passengers, cruise ships house, feed, and entertain

passengers and thus take on aspects of public accommodations." Id.  This Court should defer to

the Department of Justice's and Department of Transportation's interpretation of the ADA as

long as they represents a reasonable construction of the statute.  See Chevron U.S.A., Inc. v.

Natural Resources Defense Council, Inc., 467 U.S. 837, 843-844 (1984); Johnson v. Gambrinus

Company/Spoetzl Brewery, 116 F.3d 1052, 1060 (5th Cir. 1997).  This is so even if this Court

might have reached a different result were it confronted with the question in the first instance.[4]

See McLean v. Crabtree, 173 F.3d 1176, 1181 (9th Cir. 1999) ("Instead, [the Court] simply

ask[s] 'whether [it is] compell[ed] to reject' the agency's construction"), citing Leisnoi, Inc. v.

Stratman, 154 F.3d 1062, 1069 (9th Cir. 1998).  The determination of the Department of Justice

that cruise ships are places of public accommodation is reasonable.[5]

---

[4] Although the Eleventh Circuit in Stevens did not need to rely on deference to the Department of Justice because it found that the "plain language of Title III makes Congress' intent sufficiently clear," it noted that "in the light of the Justice Department's position, our ultimate conclusion – that Plaintiff's complaint states a claim under Title III – would remain the same, even if the language of Title III were vague and ambiguous." Stevens, 215 F.3d at 1241, n. 6.

[5] As places of public accommodation, cruise ships must comply with all Title III requirements applicable to their provision of goods and services, such as nondiscriminatory eligibility criteria, reasonable modifications in policies, practices, and procedures, provision of auxiliary aids, removal of architectural barriers in existing facilities where readily achievable, and alternatives to barrier removal that are readily achievable.  42 U.S.C. §12182(b)(2)(A); 28 C.F.R. Pt. 36, App. B at 587; Technical Assistance Manual III-1.2000(D) (1994 Supp.).

Moreover, the only three federal courts to address the question thus far have all held that a cruise ship is a place of public accommodation, subject to the requirements of Title III of the ADA. See Stevens, 215 F.3d at 1241; Deck, 51 F.Supp.2d at 1061; Walker, Case No. C 98-2926 (N.D. Cal. Nov 22, 2000) (order denying cruise ship's motion for summary judgment). As the Eleventh Circuit stated in Stevens:

> Because Congress has provided such a comprehensive definition of "public accommodation," we think that the intent of Congress [to apply Title III to cruise ships] is clear enough...Cruise ships, in fact, often contain places of lodging, restaurants, bars, theaters, auditoriums, retail stores, gift shops, gymnasiums, and health spas. And a public accommodation aboard a cruise ship seems no less a public accommodation just because it is located on a ship instead of upon dry land. In other words, a restaurant aboard a ship is still a restaurant. Very important, Congress made no distinctions — in defining "public accommodation" — based on the physical location of the public accommodation. We conclude, therefore, that those parts of a cruise ship which fall within the statutory enumeration of public accommodations are themselves public accommodations for the purposes of Title III.

Stevens, 215 F.3d at 1241.

## B.     Cruise Ships Provide "Specified Public Transportation Services"

In addition to being "places of public accommodation," cruise ships are also "specified public transportation services," which are covered by Section 12184 of the ADA. See Deck, 51 F. Supp.2d at 1061.[6]  Section 12184 prohibits discrimination on the basis of disability in "specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce."  42 U.S.C. §12184(a).  Specified public transportation is defined as "transportation by bus, rail, or any other

---

[6] In Stevens, the Eleventh Circuit found it unnecessary to decide whether cruise ships were also "specified public transportation," given its finding that they were fully covered as "places of public accommodation." 215 F.3d at 1240, n. 3.

conveyance (other than by aircraft) that provides the general public with general or special service...on a regular and continuing basis." 42 U.S.C. §12181(10) (emphasis added). The ADA directs the Department of Transportation to issue regulations to implement 42 U.S.C. §12184. 42 U.S.C. §12186(a)(1). The Department of Transportation has determined that cruise ships are covered by Section 12184 of the ADA. 56 Fed. Reg. 45,584, 45,600 (1991) (stating that "the ADA...cover[s] passenger vessels, including ferries, excursion vessels, sightseeing vessels, floating restaurants, cruise ships, and others," and also noting that "[c]ruise ships are used almost exclusively for transporting passengers and no one doubts that their operations affect commerce.").[7]

### C. Foreign-Flag Cruise Ships Are Generally Subject To United States Laws When They Are In United States Ports Or Other Internal Waters

Virtually all cruise ships serving United States ports are foreign-flag vessels. 56 Fed. Reg. 45,584, 45,600 (1991). Many of these foreign-flag cruise ships are actually owned and operated by U.S. corporations. However, whether a foreign flag cruise ship is owned by a U.S. corporation or a foreign corporation, places of public accommodation and transportation services are not exempted from the ADA's coverage if they are operated in the United States. 42 U.S.C. §12182, §12184. Unless specifically exempted by the statute in question, entities doing business in the United States must comply with all generally applicable laws, including laws that prohibit discrimination. See, e.g., Goyette v. DCA Adver., Inc., 830 F. Supp. 737, 745 (S.D.N.Y. 1993);

---

[7] The Department of Transportation has incorporated the Department of Justice regulations that govern cruise ships – including those requiring barrier removal – into its regulations. See 49 C.F.R. Pt. 37, App. D § 37.109 at 488; 49 C.F.R. 37.5(f).

<u>Ward v. W & H Voortman, Ltd.</u>, 685 F. Supp. 231, 232 (M.D. Ala. 1988). Nothing in the plain language of the ADA excludes from coverage foreign-flag cruise ships that do business in the United States. Furthermore, when a cruise ship enters United States ports and internal waters, it is doing business in the United States.[8] Therefore, cruise ships operating in United States ports and internal waters are subject to all generally applicable federal laws, including the ADA.[9]

This conclusion was recently confirmed by the Eleventh Circuit in <u>Stevens v. Premier Cruises, Inc.</u>, 215 F.3d 1237 (11th Cir. 2000). The facts in <u>Stevens</u> are strikingly similar to the instant case. The plaintiff in <u>Stevens</u>, an individual who uses a wheelchair, participated in a cruise aboard a Bahamian-flag ship owned by the defendant, a foreign-owned corporation. <u>Id.</u> at 1238. After finding that aspects of the ship were not accessible, the plaintiff filed suit alleging that the inaccessibility of the ship violated Title III of the ADA. <u>Id.</u> at 1238-1239. The defendant moved the district court to dismiss under Fed.R.Civ.P. 12(b), based in part on the ground that the ADA as a matter of law does not apply to foreign-flag cruise ships. <u>Id.</u> at 1239. After the district court granted defendant's motion, the Eleventh Circuit reversed, stating:

> The district court's conclusion. . . was grounded in an inaccurate legal assumption: that foreign-flag ships in United States waters are "extraterritorial." By definition, an extraterritorial application of a statute involves that regulation of conduct beyond U.S. borders. Accordingly, a foreign flag ship sailing in United States waters is not extraterritorial.

<u>Id.</u> at 1242 (quoting <u>Environmental Defense Fund, Inc. v. Massey</u>, 986 F.2d 528, 531

---

[8] Ports are part of a nation's internal waters. <u>See</u> <u>United States v. Louisiana</u>, 394 U.S. 11, 40 (1969).

[9] This is consistent with customary international law of the sea, which limits the authority of coastal states to regulate ships in innocent passage through their territorial waters, but permits regulation of ships that enter ports or other internal waters. <u>See</u> United Nations Convention on the Law of the Sea, done at Montego Bay, Dec. 10, 1982, 21 I.L.M. 1261 (1982).

(D.C.Cir.1993)).

The ruling in <u>Stevens</u> — that cruise ships sailing under a foreign flag are not exempt from the generally applicable laws of the countries in which it does business – is consistent with both Supreme Court and Fifth Circuit case law addressing this issue.  "It is beyond question that a ship voluntarily entering the territorial limits of another country subjects itself to the laws and jurisdiction of that country."  <u>Benz v. Compania Naviera Hidalgo, S.A.</u>, 353 U.S. 138, 142 (1957); <u>accord</u> <u>Cunard S.S. Co. v. Mellon</u>, 262 U.S. 100, 124 (1923); <u>Mali v. Keeper of the Common Jail</u>, 120 U.S. 1, 12 (1887); <u>Armement Deppe, S.A. v. United States</u>, 399 F.2d 794 (5th Cir. 1968), cert. denied, 393 U.S. 1094 (1969).  In <u>Cunard</u>, the Supreme Court held:

> The merchant ship of one country voluntarily entering the territorial limits of another subjects herself to the jurisdiction of the latter.  The jurisdiction attaches in virtue of her presence, just as with other objects within those limits.  During her stay she is entitled to the protection of the laws of that place and correlatively is bound to yield obedience to them.

262 U.S. at 124.  In <u>Armement Deppe</u>, the Fifth Circuit held:

> It is well settled that when a foreign-flag shipping line chooses to engage in foreign commerce and use American ports it is amenable to the jurisdiction of the United States and subject to the laws thereof.

399 F.2d at 797.

NCL provides no authority to support its underlying claim that United States laws, such as the ADA, do not apply to a foreign-flagged vessel sailing in domestic waters.[10]  Instead, NCL relies on the general proposition that a vessel is governed only by the law of her flag, regardless

---

[10] In fact, the United States is aware of no court decisions holding that foreign-flag ships that enter United States ports are presumptively exempt from all United States laws merely because of their foreign registry.

of where it sails, and regardless of the nature of the dispute at issue.  However, a review of both

Supreme Court and Fifth Circuit case law reveals that this general proposition is simply not

applicable in cases where a ship is operating in U.S. waters and the claim arises out of a dispute

between the ship and members of the general public.  See e.g., Cunard, 262 U.S. at 124 (1923);

Armement Deppe, 399 F.2d at 797.  See also Stevens, 215 F.3d at 1242.

NCL relies on National Labor Relations Board v. Dredge Operators Inc., 19 F.3d 206 (5th

Cir. 1994),[11] in which the Fifth Circuit ruled that the NLRB had jurisdiction over an internal

labor management dispute occurring on a United States flag vessel operating in Hong Kong

waters.  However, the holding in Dredge Operators is not applicable to the instant case.  The

Court in Dredge Operators held that where there is a conflict of law with respect to an issue

implicating the internal management of a ship, the laws of the United States could be applied to a

United States flag ship even though it is operating in foreign waters.  Id. at 212.  However, in the

instant case, there is no conflict of law at issue.  Further, the Court in Dredge Operators based its

decision in large part on the fact that the legal dispute at issue was an internal labor dispute on

the vessel in question.  19 F.3d at 211.  In the instant case, the legal dispute is not internal; it

centers around NCL's rights and responsibilities with respect to members of the United States

public.  See also Stevens, 215 F.3d at 1242 (recognizing a separate and different legal

presumption when issues involve the internal management and affairs of foreign-flagged

vessels).  Finally, the instant case involves a  ship sailing under the flag of the Bahamas operating

---

[11]NCL further relies on Restatement (Third) of the Foreign Relations Law of the United States §
501 (1987).  However, Section 501 of the Restatement merely establishes that a ship has the
nationality of the flag it flies under.  It does not, as NCL implies, address the issue of whether a
vessel is universally governed only by the law of her flag, regardless of the circumstances.

in United States waters and is therefore properly analyzed by the line of cases dealing with

foreign-flag ships operating on domestic waters.  See e.g., Cunard, 262 U.S. at 124 (1923);

Armement Deppe, 399 F.2d at 797.  See also Stevens, 215 F.3d at 1242 (holding that the legal

analysis applied to ships sailing in foreign waters is different than the legal analysis applied to

ships sailing in domestic waters).

### 1.    The Presumption Against Extraterritoriality Does Not Apply

It is true that "legislation of Congress, unless a contrary intent appears, is meant to apply

only within the territorial jurisdiction of the United States."  EEOC v. Arabian Am. Oil Co., 499

U.S. 244, 248 (1991) (ARAMCO) (quoting Foley Bros. v. Filardo, 336 U.S. 281, 285 (1949)).[12]

Under the ARAMCO standard, Title III of the ADA does not apply extraterritorially.  However,

the Supreme Court's decision in Cunard makes clear that activity that occurs on a foreign-flag

ship within United States internal waters or ports is not extraterritorial.  Id., 262 U.S. at 123-124.

In Cunard, the Court held that the Volstead Act, which outlawed the importation and

transportation of alcoholic beverages within the United States, prohibited foreign-flag vessels

from bringing alcohol into American ports.  After concluding that the Act did not apply

extraterritorially, the Court held that the Act did apply to vessels while they were docked in an

American port or otherwise operating in American waters.  Id. at 124.  The Court found it

---

[12]  In ARAMCO, the Court applied this presumption in ruling that Title VII did not prohibit
employment discrimination against United States citizens working for a U.S. employer in Saudi
Arabia, and cited the ADA as a statute that had "[never] been held to apply overseas."  Id., 499
U.S. at 244, 251.  Following the decision in ARAMCO, Title I of the ADA was amended to
cover employees employed by covered entities in foreign countries.  See 42 U.S.C. 12111(4); 42
U.S.C. 12112(c).

irrelevant to its analysis that the alcoholic beverages were kept sealed in storage to be used only

when the ship was outside United States waters. Id. at 130. Because the beverages were brought

into United States ports and harbors, the statute applied. Id. See also EEOC v. Bermuda Star

Line, Inc., 744 F. Supp. 1109, 1111 (M.D. Fla. 1990) (presumption against extraterritoriality did

not require dismissal of Title VII claim alleging that plaintiff had been denied employment on

foreign-flag ship, where plaintiff alleged that her application had been submitted to the

employer's Miami office and had been rejected in the United States).

Thus, when a cruise ship is doing business within the internal waters and ports of the

United States, the principle of extraterritoriality is not implicated simply because the ship is

owned by a foreign company or sails under a foreign flag. Application of the presumption

against extraterritoriality is triggered by where the conduct takes place, not by the nationality of

the actor. See Stevens, 215 F.3d at 1242 (rejecting the argument "that foreign-flag ships in

United States waters are 'extraterritorial'... [since] '[b]y definition, an extraterritorial application

of a statute involves the regulation of conduct beyond U.S. borders,'" citing Environmental

Defense Fund, Inc. v. Massey, 986 F.2d 528, 531 (D.C. Cir. 1993) (emphasis added in Stevens)).

Here, Plaintiffs are not seeking an extraterritorial application of the statute. Plaintiffs

allege that they were subjected to discrimination in the United States when they booked the

cruise with NCL, and when they boarded the ship in Houston and discovered that the ship and

most of its activities were not accessible to people with disabilities.

> **2.    Application of the ADA Does Not Intrude Upon the Internal
> Management and Affairs of Foreign-Flag Vessels**

Customary international law recognizes that "the law of the flag state ordinarily governs

the internal affairs of a ship," and nations, therefore, generally refrain from regulating such

matters even when the ship enters their ports.  See McCulloch v. Sociedad Nacional de

Marineros de Honduras, 372 U.S. 10, 21; accord Mali,120 U.S. at 12.  The Supreme Court has

applied these principles in a series of cases interpreting the scope of the National Labor Relations

Act (NLRA), 29 U.S.C. §151, a statute which regulates a wide variety of activities that affect

"commerce."  See McCulloch, 372 U.S. at 15.  Although the NLRA is broad enough to reach

foreign-flag ships, the Court construed it not to regulate the labor relations between a foreign

ship and its foreign crew, even when the ship is temporarily docked in a United States port.[13]  See

also Windward Shipping Ltd. v. American Radio Ass'n, 415 U.S. 104 (1974).

That rationale does not apply to this case, which does not involve "the pervasive

regulation of the internal order of a ship," see McCulloch, 372 U.S. at 19 n. 9, but rather the

protection of passengers who are United States citizens and who are embarking and

disembarking in United States ports.  See Stevens, 215 F.3d at 1242 (concluding that the

"internal management and affairs of a foreign-flag ship" were not implicated and that the real

issue was "whether Title III requires a foreign-flag cruise ship reasonably to accommodate a

---

[13]  In McCulloch, the Court explained that applying the Act in such circumstances would
contravene "the well-established rule of international law that the law of the flag state ordinarily
governs the internal affairs of a ship." 372 U.S. at 21.  The Court found that application of U.S.
law would unnecessarily interfere with the internal relations between the ships' foreign owners
and their foreign crews, and emphasized that applying the NLRA to foreign seamen employed on
a foreign-flag ship would not advance the Act's purpose of protecting United States workers. Id.
at 18; see also Dowd v. International Longshoremen's Ass'n, 975 F.2d 779, 788-89 (11th Cir.
1992) (finding this presumption to govern the applicability of a statute to "the practices of
owners of foreign vessels which are temporarily present in an American port with regard to
foreign employees working on those vessels.")  The Court, therefore, held that it would be
inappropriate to construe the Act to regulate the labor relations between a foreign ship and its
foreign crew, unless Congress had clearly expressed such an intention. Id.

disabled, fare-paying, American passenger while the ship is sailing in American waters.")

Thus, absent a treaty obligation to the contrary, customary international law authorizes nations to regulate all matters concerning ships that enter their ports, excepting only those internal matters that affect "only the vessel or those belonging to her, and d[o] not involve the peace or dignity of the country, or the tranquility of the port."[14] See Lauritzen v. Larsen, 345 U.S. 571, 585-586 (1953). NCL relies on this same standard, but erroneously argues that the issues arising out of the instant case are matters internal to the cruise ship and do not involve the dignity of the United States. NCL's brief, pp. 8 -10.

Accessibility of a ship to United States passengers is not internal to a ship's operations; it does not affect "only the vessel or those belonging to her." Lauritzen, 345 U.S. at 571. See also Mali, 120 U.S. at 12. Rather, accessibility concerns the relations of the cruise line with United States residents who use its services. Because application of the ADA directly protects the interests of United States residents, the principles cautioning restraint when regulating the relations between foreign ships and their foreign crew are not applicable. Moreover, unlike the situation in McCulloch and Benz, applying the ADA to foreign-flag cruise ships that enter United States ports furthers the explicit purpose of the Act, to protect the rights of Americans with disabilities. See 42 U.S.C. §12101. This goes directly to both NCL's rights and responsibilities with respect to members of the United States public, and therefore is not an internal matter. Furthermore, this directly serves the interest of American citizens and residents to be protected from unlawful discrimination on the basis of disability, and therefore has a direct effect on the

---

[14] See also United States v. Louisiana, 470 U.S. at 98 (nation has same "complete sovereignty" over internal waters as over land territory).

dignity of the United States.  Thus, the international law principles relied upon by NCL do not require courts to construe the ADA to exclude from coverage foreign-flag ships that enter United States ports.

This conclusion draws further support from the fact that United States citizens and residents may bring Title VII actions against foreign-flag cruise lines without conflict with international law.  In EEOC v. Kloster Cruise Ltd., 939 F.2d 920 (11th Cir. 1991), the Court held that the EEOC did not clearly lack jurisdiction to investigate a Title VII complaint alleging that a foreign-flag cruise line with business operations in the United States had fired two American citizens in violation of federal law.  In rejecting the argument that McCulloch and its progeny required that the subpoena be quashed, this Court held that the application of Title VII to the employment of United States citizens was "sufficiently dissimilar" to the "pervasive regulation of the internal order of a ship" at issue in McCulloch, 372 U.S. at 19 n.9.  Kloster Cruise, 939 F.2d at 923-924.  See also Bermuda Star Line, 744 F. Supp. at 1111 (rejecting argument that the employment of United States citizens on cruise ship was an internal matter that should be governed by law of the flag).

3.     **Application of the ADA to Foreign-Flag Vessels Does Not Abrogate Any International Treaties**

NCL has also failed to demonstrate that application of the ADA to cruise ships will conflict with the provisions of any applicable international treaty.  See Murray v. The Schooner Charming Betsy, 6 U.S. (2 Cranch) 64, 118 (1804) (Marshall, C.J.) ("[A]n act of Congress ought never to be construed to violate the law of nations, if any other possible construction remains.") In this context, Article 10 of the Convention on the High Seas requires states to take steps to

ensure that ships that fly their flag are constructed in a manner that ensures safety at sea. Convention on the High Seas, Apr. 29, 1958, art. 10, T.I.A.S. No. 5200, 450 U.N.T.S. 82. The International Convention for the Safety of Life at Sea (SOLAS) (Consolidated Ed. 1997), 56 Fed. Reg. 45,584, 45,600 (1991), establishes minimum safety standards for the construction, equipment, and operation of ships. See Craig Allen, Federalism in the Era of International Standards (Part II), 29 J. Mar. L. & Com. 565, 578 (1998). Nothing in the plain language of the Convention on the High Seas or SOLAS prevents states from imposing accessibility requirements on ships that enter their ports. NCL has not shown how applying the ADA's general non-discrimination provisions to its ships would conflict with any international safety standard established in SOLAS or in any other international convention to which the United States is a party.

Instead, NCL argues that "a federal district court could apply a congressional statute in a way that conflicts with the construction standards of SOLAS." NCL's Brief, p. 10. However, the extent to which there may be any conflict between SOLAS and ADA accessibility requirements is a question to be resolved at trial. If NCL can demonstrate that a particular physical modification proposed by Plaintiffs would cause a conflict with the requirements of an international treaty (or even simply that it would create a safety hazard), such modification, by definition, would not be "readily achievable," and would not be required by the ADA.[15]

---

[15] This approach is consistent with the general principle that when two applicable laws overlap, courts should give effect to both laws to the extent possible. See, e.g., Morton v. Mancari, 417 U.S. 535, 551 (1974); Posadas v. National City Bank, 296 U.S. 497, 503 (1936). At this stage, however, any such conflict is purely speculative and cannot be used as a basis for dismissing Plaintiffs' complaint. See Dredge Operators, 19 F.3d at 213-214 (holding that claims of potential conflict with foreign law were not ripe where no conflict had yet occurred).

Furthermore, states are not precluded by customary international law from imposing accessibility requirements on ships that enter their ports. Customary international law gives states broad authority to regulate ships that enter their ports. See Allen, supra, 29 J. Mar. L. & Com. at 570 (1998). The United Nations Convention on the Law of the Sea[16] precludes states from imposing design and construction requirements that do not give effect to generally accepted international standards on ships that are in innocent passage (i.e., not in a port) in their waters. See United Nations Convention on the Law of the Sea, Dec. 10, 1982, art. 21(2), 21 I.L.M. 1261, 1274. This restriction does not apply, however, when the ship enters the ports or other internal waters of a foreign state. See United Nations Convention, supra, art. 11, 18, 25(2), 21 I.L.M. at 1273-1275; President's Transmittal of the United Nations Convention on the Law of the Sea, Oct. 7, 1994, 34 I.L.M. 1393, 1406.

**D.     The Departments of Justice and Transportation Have Determined That Foreign-flag Cruise Ships Are Subject to the ADA When They Are in United States Ports or Other Internal Waters**

The Department of Justice has determined that cruise ships must comply with the ADA "to the extent that [their] operations are subject to the laws of the United States." 28 C.F.R. Pt. 36, App. B at 587. Because foreign-flag vessels are "subject to the laws of the United States" when they are in United States ports or other internal waters, this means that foreign-flag cruise ships are subject to the requirements of the ADA when they are in the ports or internal waters of the United States. The Department of Justice Technical Assistance Manual provides that

---

[16] The United States has not yet ratified the Convention, but, pursuant to the President's Ocean Policy Statement, 19 Weekly Comp. Pres. Doc. 383 (Mar. 10, 1983), it is recognized to reflect customary international law to which the United States adheres.

foreign-flag ships "that operate in United States ports may be subject to domestic law, such as the ADA, unless there are specific treaty prohibitions that preclude enforcement." Title III Technical Assistance Manual III-1.2000(D) (1994 Supp.).[17] The Department of Transportation has similarly determined that the United States "appears to have jurisdiction to apply ADA requirements to foreign-flag cruise ships that call in U.S. ports" except to the extent that enforcing ADA requirements would conflict with any international treaty. 56 Fed. Reg. 45,584, 45,600 (1991). Because the ADA is generally applicable federal legislation and the plain language of Title III does not exempt foreign-flag ships from its coverage, NCL can avoid coverage only by establishing that some canon of statutory construction requires this Court to exempt foreign-flag cruise ships that do business in the United States from the requirements of the ADA. Despite NCL's claims to the contrary, no such presumption against application of the ADA applies in this case.

NCL argues that if Congress intended the ADA to apply to foreign-flag ships, it would have specifically referenced them in the Act. NCL's Brief, pp. 7-8. However, they provide no authority for such a statutory construction. In fact, there are numerous instances in which courts have upheld the application of United States law to foreign-flag ships, in the absence of any explicit statutory provision stating that such ships are covered by the applicable statute. See, e.g., International Longshoremen's Local 1416 v. Ariadne Shipping Co., 397 U.S. 195 (1970);

---

[17] Courts ordinarily construe statutes and treaties to avoid a conflict between them and to give effect to both laws. See, e.g., Posadas, 296 U.S. at 503. If Plaintiffs prevail, then, the Court should not order any relief that conflicts with any treaty obligations of the United States, such as the International Convention for the Safety of Life at Sea (SOLAS). See SOLAS (Consolidated Ed. 1997); 56 Fed. Reg. 45,584, 45,600 (1991).

Armement Deppe, S.A. v. United States, 399 F.2d 794 (5ᵗʰ Cir. 1968), cert. denied, 393 U.S.

1094 (1969); United States v. Royal Caribbean Cruises, Ltd., 11 F. Supp. 2d 1358 (S.D. Fla.

1998).  See also Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 212 (1998) (the fact

that a statute can be applied in situations not expressly anticipated by Congress does not

demonstrate ambiguity; it demonstrates its breadth).

## II.     TITLE III'S BARRIER REMOVAL PROVISION APPLIES TO CRUISE SHIPS

### A.     To the Extent Plaintiffs' Claims for Relief Seek Physical Modifications, Title III's Barrier Removal Provisions Are Applicable

In the preamble to its Title III regulations, the Department of Justice stated that cruise

ships are places of public accommodation and are subject to subparts B and C of its regulations

(28 C.F.R. 36.201-36.310).[18]  28 C.F.R. Pt. 36, App. B at 587.  Similarly, the Department of

Transportation explained in its interpretive guidance that "ferries and other passenger vessels

operated by private entities are subject to the requirements of [49 C.F.R. 37.5] and applicable

requirements of 28 C.F.R. Pt. 36, the [Department of Justice] rule under title III of the ADA."  56

Fed. Reg. 45,584, 45,744 (1991) (codified at 49 C.F.R. Pt. 37, App. D § 37.109 at 488).

These regulations establish enforceable requirements for removal of physical barriers in

existing cruise ships.  The regulations require covered entities, including cruise ships, to comply

with the "barrier removal" provision as set forth in 42 U.S.C. §12182(b)(2)(A)(iv) for public

accommodations and in 42 U.S.C. §12184(b)(2)(C) for entities primarily engaged in

---

[18]  An agency's interpretation of its own regulations is controlling unless it is plainly erroneous or inconsistent with the regulations.  See Auer v. Robbins, 519 U.S. 452, 461 (1997); Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994).

transportation.  28 C.F.R. 36.304; 49 C.F.R. 37.5(f); Title III Technical Assistance Manual III-1.2000(D) (1994 Supp.).  These barrier removal provisions require covered entities to "remove architectural barriers, and communication barriers that are structural in nature, in existing facilities. . . where such removal is readily achievable."  42 U.S.C. §12182(b)(2)(A)(iv).  Barrier removal is considered "readily achievable" if it is "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. §12181(9).  The regulations give 21 examples of measures that, depending on the facts, may or may not be "readily achievable" for a given facility to implement, including, inter alia, installing or providing temporary ramps; removing high-pile, low density carpeting; repositioning such items as shelves, telephones and paper-towel dispensers and adding full-length mirrors; adding raised markings on elevator control buttons; installing flashing alarm lights; providing alternative accessible paths; installing accessible door hardware; installing grab bars in bathrooms; installing raised toilet seats and rearranging toilet partitions to increase maneuvering space; insulating pipes under sinks to prevent burns; and rearranging tables, chairs and other furniture.  28 C.F.R. 36.304(b).

The readily achievable standard "focuses on the business operator and addresses the degree of ease or difficulty of the business operator in removing a barrier; if barrier removal cannot be accomplished readily, then it is not required."  S. Rep. No. 116, 101st Cong., 1st Sess. 65-66 (1989); H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 109-110 (1990). Title III provides that the primary factors to be considered in determining whether an action is readily achievable are "the nature and cost of the action," "the overall financial resources of the facility," including "the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility," "the overall financial resources of the covered entity," including "the number,

type and location of its facilities," and "the type of operation or operations of the covered entity." 42 U.S.C. § 12181(9). In addition, the regulations implementing Title III make clear that "legitimate safety requirements that are necessary for safe operation" must also be considered as an essential part of the determination whether a given action is "readily achievable."[19] As far as the ADA is concerned, then, the meaning of the barrier removal requirement with respect to any given access barrier is ultimately driven, not by compliance with any particular design standard, but by whether a proposed modification is "readily achievable" for the covered entity to implement. When barrier removal is not readily achievable, public accommodations must take whatever alternative measures are readily achievable to provide their goods and services to people with disabilities in a non-discriminatory manner. 42 U.S.C. § 12182(b)(2)(A)(v); 28 C.F.R. § 36.305.

**B.  The Barrier Removal Provisions Apply to Cruise Ships Even in the Absence of New Construction and Alteration Standards for Cruise Ships**

NCL argues that the instant case should be dismissed because the Federal Government has not promulgated new construction and alteration standards for cruise ships. However, the requirement that a public accommodation remove physical barriers is not dependent on the existence of new construction or alteration standards for a particular type of public

---

[19] Thus, a cruise ship may demonstrate that a proposed modification is not readily achievable because it would pose a safety hazard. For example, if a proposed modification would violate an applicable safety standard mandated by federal law or an international treaty, such as the International Convention for the Safety of Life at Sea (SOLAS), then that modification would not be readily achievable, and it would not be required under the ADA. See Title III Technical Assistance Manual III-1.2000(D) (1994 Supp.) ("unless there are specific treaty prohibitions that preclude enforcement...places of public accommodation aboard ships must comply with all of the Title III requirements, including removal of barriers to access where readily achievable"); see also 56 Fed. Reg. 45,584, 45,600.

accommodation or space; the standards merely serve as a guide for determining how to remove

barriers. In fact, the Department has specifically addressed the issue raised by Defendants with

respect to cruise ships. In its Technical Assistance Manual for title III, issued in 1993, the

Department noted that, until such time as specific standards are issued for ships, there is "no

requirement that ships be constructed accessibly...Cruise ships would still be subject to other title

III requirements...." Title III Technical Assistance Manual III-5.3000 (1993). In the 1994

supplement to the Manual, the Department more specifically explained:

> Places of public accommodation aboard ships must comply with all of the title III
> requirements, including removal of barriers to access where readily achievable.
> Currently, however, a ship is not required to comply with specific accessibility
> standards for new construction or alterations, because specific accessibility
> standards for new construction or alteration of cruise ships have not yet been
> developed.

Title III Technical Assistance Manual III-1.2000(D) (1994 Supp.) (emphasis added).

To support its argument, NCL relies on the single case of Deck, 51 F. Supp.2d at 1061,

which held, in part, that claims failing under the "New Construction and Alterations" section of

the ADA (42 U.S.C. §12183, 28 C.F.R. Pt. 36, Subpart D) should be dismissed until the Federal

Government issues regulations pursuant to that section. However, the Deck opinion is not

inconsistent with Plaintiffs' barrier removal claim in the instant case. First, this is a barrier

removal case, not one involving a claim pursuant to the "New Construction and Alterations"

section of the ADA (42 U.S.C. §12183, 28 C.F.R. Pt. 36, subpart D). See Complaint, ¶¶ 24-35.

Thus, this part of the Deck holding is not relevant to the instant case. Second, the Deck Court

held that "to the extent that Plaintiff raises [ADA claims other than 'New Construction and

Alterations'], they are clearly applicable to cruise ships, and thus are properly brought in the

instant case." <u>Deck</u>, 51 F.Supp at 1061.  In the instant case, Plaintiffs allege that they were

denied full and equal enjoyment of NCL's goods, services, and accommodations, pursuant to 42

U.S.C. §12182, 28 CFR Pt. 36, subparts B and C.  Thus, consistent with <u>Deck</u>, plaintiffs' claims

have been properly brought before this Court.  <u>Deck</u>, 51 F. Supp. at 1061.

Moreover, Plaintiffs make several claims that do not necessitate physical modifications.

For example, Plaintiffs allege that NCL charges passengers with disabilities higher fares than

those charged to passengers without disabilities.  Complaint, ¶ 32.  In addition, Plaintiffs allege

that NCL requires payment of illegal surcharges for accessible features and/or accommodations.

<u>Id</u>., ¶¶ 17, 32.  These claims, pursuant to Section 302 of Title III (42 U.S.C. §12182), are

remedied though changes in NCL's policies and practices.  Thus, NCL's argument with respect

to a lack of regulations governing potential physical modifications is clearly irrelevant to those

claims in which Plaintiffs seek a policy or practice remedy.

The absence of federal regulations governing new construction and alterations of cruise

ships, therefore, does not invalidate Plaintiffs' claim for relief.  The barrier removal requirement,

which is one of various general non-discrimination provisions in Section 302 of Title III (42

U.S.C. §12182(b)(2)(A)(iv)), is separate from the new construction and alteration requirements

in Section 303 (42 U.S.C. §12183), and is applicable in the instant case.  Whether a particular

change is "readily achievable" is an issue of fact to be determined by the court.  Further,

Plaintiffs' claims seeking policy or practice remedies are issues of fact to be determined by the

court.  Thus, each of Plaintiffs' claims for relief pursuant to Section 302 of Title III (42 U.S.C.

§12182) is appropriately alleged and arguably could be remedied through applicable physical or

policy changes and therefore Defendant's motion to dismiss should be denied.

CVisPDF - www.fastio.com

# CONCLUSION

For the foregoing reasons, NCL's Motion to Dismiss should be denied.

Respectfully submitted,

BILL LANN LEE
Assistant Attorney General
Civil Rights Division

JOHN L. WODATCH
Chief
L. IRENE BOWEN
Deputy Chief
PHILIP L. BREEN
Special Legal Counsel

DANIEL I. WERFEL
DANIEL W. SUTHERLAND
Trial Attorneys
Disability Rights Section
U.S. Department of Justice
P.O. Box 66738
Washington, D.C.  20035-6738
Phone: 202-514-5510
           202-616-5540
Fax:    202-307-1197

Gordon Young
Assistant United States Attorney
Keith E. Wyatt
Chief, Civil Division
Office of the United States Attorney
P.O. Box 61129
Houston, Texas 77208
Phone: 713-567-9000
Fax: 713-718-3303

Attorneys for United States as Amicus Curiae

27

## CERTIFICATE OF SERVICE

I, Daniel I. Werfel, declare:

I am over the age of 18 and not a party to the within action.  I am employed by the U.S. Department of Justice, Civil Rights Division, Disability Rights Section.  My business address is 1425 New York Avenue, Suite 4039, Washington, D.C.  20005.

On December 4, 2000, I served a true and correct copy of the attached document

**UNITED STATES' MEMORANDUM OF LAW AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT NORWEGIAN CRUISE LINE'S MOTION TO DISMISS**

on each person or entity named below by enclosing a copy in an envelope addressed as shown below and depositing the same with Federal Express for priority overnight delivery.

Date and Place of service: October 21, 2000, Washington, D.C.

Person(s) and/or Entity(ies) to Whom Mailed:

| | |
|---|---|
| Thomas H. Wilson | Elaine Roberts |
| Vinson & Elkins L.L.P. | Bruckner Burch PLLC |
| 2300 First City Tower | 5847 San Felipe, Suite 39000 |
| 1001 Fannin Street | Houston, Texas 77057 |
| Houston, Texas 77002-6760 | |
| | |
| Attorney for Defendant Norwegian | Attorney for Plaintiffs Douglas |
| Cruise Limited d/b/a Norwegian Cruise | Spector, Ana Spector, Julia |
| Lines ("NCL") | Hollenbeck, and Rodger Peters |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:  December 4, 2000, at Washington, D.C.

Daniel I. Werfel