**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DOUGLAS SPECTOR,** *et al.,* | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-00-2649** |
| | § | |
| **NORWEGIAN CRUISE LINE LIMITED** | § | |
| **d/b/a NORWEGIAN CRUISE LINE,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is Norwegian Cruise Line's Motion for Summary Judgment (Dkt. #73).

After considering the motion, response, and applicable law, the court is of the opinion that the motion

for summary judgment should be DENIED.

**Procedural History**

A brief recitation of the procedural history in this case is necessary in order to put the parties'

arguments into context. On August 1, 2000, five named Plaintiffs filed a complaint under the American

with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.* against Norwegian Cruise Lines ("NCL")

seeking injunctive relief.  The parties have since filed their First Amended Original Complaint (Dkt. #4).

The original named Plaintiffs were Douglas Spector, his wife Ana Spector, Julia Hollenbeck, David

Killough and Rodger Peters.[1]  Mr. Spector and Hollenbeck have physical impairments that require them

to use wheelchairs or electric scooters for mobility.  Mrs. Spector and Killough are not disabled, but

accompanied individuals with physical impairments on an NCL cruise.  Plaintiffs took cruises on the

---

[1] Rodger Peters died in early 2005. *See* D.'s M.S.J. (dkt. #73), Ex. I.  He therefore can no
longer pursue the prospective relief sought in this case.  *Plumley v. Landmark Chevrolet, Inc.*,
122 F.3d 308 (5th Cir. 1997).

*Norwegian Sea* (the "*Sea*") or the *Norwegian Star* (the "*Star*"), both registered to NCL under the Bahamian flag.  Based on their experiences, they allege NCL violated the ADA in two general ways: (1) through maintaining architectural barriers that precluded their full enjoyment of the facilities ("Physical Barrier Claims"), and (2) through the establishment of pricing structures and corporate policies that had a discriminatory impact upon them ("Non-Physical Barrier Claims").

On September 9, 2002, this court issued an Order (dkt. #33) ruling that the ADA applied to foreign-flagged cruise ships (such as the *Sea* and the *Star*) in United States waters, but dismissed the Plaintiffs' Physical Barrier Claims because the Department of Justice and/or the Department of Transportation had failed "to create guidelines for the new construction or alterations of cruise ships," thereby "barring enforcement of Title III's existing barrier removal guidelines." *Spector v. Norwegian Cruise Line Ltd.*, 2002 WL 34100212, *13 (S.D. Tex. 2002). The Plaintiffs' Non-Physical Barrier Claims were left intact.

The Plaintiffs appealed this ruling to the Fifth Circuit.  The Fifth Circuit upheld the dismissal of the Physical Barrier Claims, however, the Fifth Circuit determined that Title III did not apply to foreign-flagged cruise ships.  *Spector v. Norwegian Cruise Line Ltd.*, 356 F.3d 641, 646 (5th Cir. 2004). Thereafter, the case was appealed to the United States Supreme Court.  The Supreme Court reversed the Fifth Circuit and held that Title III was applicable to foreign-flagged ships operating in United States waters, except to the extent that the statute's requirements regulated a ship's "internal affairs." *Spector v. Norwegian Cruise Line, Ltd.,* 545 U.S. 119, 134–36 (2005).  Without an express ruling, the Supreme Court indicated the Physical Barrier Claims may still face Title III obstacles because removing physical barriers may interfere with a ship's internal affairs or with other international treaties. *Id.*  The Supreme Court remanded the case to the Fifth Circuit for further review of the Physical Barrier Claims.

On remand, the Fifth Circuit requested that the parties submit letters advising it whether it should address the issues on the merits or remand the case back to the district court for further proceedings. Because the case had not moved past the Rule 12 motion to dismiss stage and NCL had for the first time presented challenges to the Plaintiffs' claims on standing and mootness grounds, the Fifth Circuit decided to remand the case. *Spector v. Norwegian Cruise Line Ltd.*, 427 F.3d 285 (5th Cir. 2005) (per curiam).

NCL currently seeks summary judgment arguing that  the Plaintiffs' claims are moot because the ships made the basis of this suit are no longer owned or operated by NCL.  Further, NCL contends because the Plaintiffs' claims are moot with respect to the *Sea* and the *Star*, they lack standing to assert claims regarding any other ships in NCL's fleet.  Because the Fifth Circuit remanded the case to this court to address the mootness and standing arguments and did not rule on this court's original ground for dismissing the Plaintiffs' Physical Barrier Claims, those claims remain dismissed on the ground that the agencies have not created guidelines for the new construction or alteration of cruise ships.  The parties have conducted limited discovery on the Non-Physical Barrier Claims for the purpose of addressing NCL's standing and mootness arguments.

**Summary Judgment Standard**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 347 (2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact.  *Id*. at 322.  If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required.  *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial."  *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *Celotex*, 477 U.S. at 323-25.  To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact.  *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant.  *See Yaquinto v. Segerstrom* (*In re Segerstrom*), 247 F.3d 218, 223 (5th Cir. 2001); *Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998).  The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party

as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).  However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."  *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

## Discussion

NCL argues Plaintiffs lack standing and their claims are moot because NCL sold the two ships made the basis of Plaintiffs' complaint.  "The Constitution's case-or-controversy limitation on federal judicial authority. . . underpins both our standing and our mootness jurisprudence, but the two inquiries differ." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 180 (2000).  The court will address the standing and mootness arguments separately; however, as a preliminary matter the court believes it is necessary to determine if Plaintiffs' Non-Physical Barrier Claims are limited to the two particular ships on which they sailed, which have now been sold by NCL.

The Complaint filed by Plaintiffs not only makes claims against NCL on a company-wide basis,[2] but the summary judgment evidence submitted satisfies the court that their claims are not limited to the two ships, the *Sea* and the *Star*.  Specifically, the Plaintiffs have submitted the terms and conditions applicable to each passenger sailing on an NCL cruise, along with those same terms and conditions

---

[2]  Reading the complaint as a whole, it becomes clear that Plaintiffs' claims are not ship specific. *See* dkt. #4.  Specifically, the Plaintiffs brought this action on "behalf of themselves and all current and former passengers of NCL cruises who are similarly situated." *Id.* at 7.  Further, in the violations section of the complaint, no specific ship is ever mentioned and the alleged conduct concerns NCL generally. *Id.* at 8–10. The prayer for relief also seeks relief from NCL's policies generally. *Id.* at 12.

attached to Ana and Douglas Spectors' cruise tickets from 1999.[3] Within the terms and conditions of

the "Norwegian Cruise Line Contract of Passage," which each passenger is required to accept upon

purchasing the ticket and boarding the vessel,[4] a person with a disability requiring special attention or

treatment must report this to NCL when the reservation is made.[5] A medical certificate certifying fitness

for travel may also be required for persons with disabilities.[6]  Also the terms provide:

> [h]andicapped persons are advised that certain international safety requirement and
> U.S. Coast Guard Regulations may cause difficulty for mobility-impaired persons.
> . . .  Carrier (NCL) may require such persons to be accompanied by and share the
> same cabin with an adult who is not physically impaired as aforesaid.  Passengers
> confined to wheelchairs must provide their own . . . wheelchair, as those wheelchairs
> which may be available on the vessel are for emergency use only.  Carrier reserves
> the right to refuse or revoke passage to anyone who fails to notify Carrier of a
> physical disability or who is in the sole judgment of Carrier in such physical or
> mental condition as to be unfit for travel. . . .Carrier reserves the right to refuse or
> deny participation in any activities or programs either aboard the vessel or onshore
> at any port of call which are sponsored or promoted by Carrier to any passenger who
> has, in the sole judgment of Carrier, past or present medical conditions that may
> present risks in such activity and programs. . . .[7]

Further, Ana Spector testified in her deposition that she was unable to take any excursions on

the particular NCL cruise she took because there were no accessible excursions available.[8]  Douglas

Spector also testified regarding the alleged "illegal surcharges" charged by NCL for a passenger who

---

[3]  P.'s Resp. (dkt. #83), Ex. 1.

[4]  *Id.*

[5]  *Id.* at ¶ 27.

[6]  *Id.*

[7]  *Id.*

[8]  *Id.* Ex G, p.158.

must use an "accessible cabin."[9]  The illegal surcharge alleged is based on what is called a "run-of-the-ship" promotion which NCL offers to any passenger who is willing to take any room within a certain category.  Spector claims this promotion effectively excludes disabled persons because they are not able to utilize just any room and so few accessible rooms are available on NCL cruises that it would be highly unlikely for them to receive an accessible room by taking advantage of this promotion.[10]  Although NCL maintains that the "run-of-the-ship" discount is provided to all passengers–disabled or not,[11] the policy in practice may still have the effect of discriminating because of the limited number of accessible rooms and disabled persons inability to utilize a room that does not accommodate their disability.

Viewing the evidence in a light most favorable to the Plaintiffs, the evidence sufficiently supports Plaintiffs' position that its claims are not ship-specific, but rather relate to NCL's general company-wide policies, specifically NCL's practices and policies relating to eligibility criteria and pricing.  Therefore, the court will now analyze NCL's standing and mootness arguments with the understanding that Plaintiffs' challenges relate to NCL's general company-wide policies.

I.      Standing

NCL argues that Plaintiffs lack standing to pursue claims against NCL because the ships made the basis of the Plaintiffs' complaint are no longer owned or operated by NCL.  The standing of a party is a threshold question apart from the merits of the claim to determine if the "litigant is entitled to have the court decide the merits of the dispute."  *Warth v. Seldin*, 422 U.S. 490, 498, 517–18 (1975) ("The

---

[9]  P.'s Amended Complaint (dkt. #4).

[10]  D.'s Reply (dkt. #84), Ex. C.

[11]  *Id.* Ex. D, ¶ 6.

rules of standing . . . are threshold determinants of the propriety of judicial intervention."). Article III of the United States Constitution requires that the plaintiff make out an actual "case and controversy" such that the plaintiff must "allege[] such a personal stake in the outcome of the controversy" as to warrant the invocation of federal court jurisdiction. *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). A federal court's jurisdiction therefore can be invoked only when the plaintiff has individually suffered "some threatened or actual injury resulting from the putatively illegal action." *Id.* at 499 (citations omitted). The actual or threatened injury required by Article III may exist solely by virtue of "statutes creating legal rights, the invasion of which creates standing." *Id.* at 500.

The United States Supreme Court has enunciated a three part test to determine if a party has standing: (1) plaintiff must have suffered an "injury in fact"–an invasion of a legally protected interest which is (a) concrete and particularized (i.e. the injury must affect the plaintiff in a personal and individual way) and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 553, 560–61 (1992). Standing is determined as of the lawsuit's commencement and the facts as they existed at that time. *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830 (1989). The party invoking federal jurisdiction bears the burden of establishing these elements. *Lujan*, 504 U.S. at 561.

NCL challenges the Plaintiffs ability to meet the "injury in fact" element arguing that Plaintiffs' general assertions that they intend on taking future cruises on other ships is insufficient to create standing. NCL also contends Plaintiffs are unable to meet the standing requirement for seeking injunctive relief because they are unable to show substantial and imminent irreparable harm. To meet

the basic requirements for seeking injunctive relief in a federal court, Plaintiffs must establish the

likelihood of substantial and immediate irreparable harm and the inadequacy of remedies at law. *O'Shea*

*v. Littleton*, 414 U.S. 488, 502 (1974).  The analysis involved in the general standing "injury in fact"

requirement and the likelihood of substantial and immediate irreparable harm necessary to seek

injunctive relief are closely related and several Supreme Court rulings help guide this court's analysis.

In *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the petitioner sought an injunction enjoining

the Los Angeles Police Department from using chokeholds in situations where the officer was not

threatened with deadly force. *Id.* at 98.  The Court found that petitioner had failed to allege the requisite

case or controversy because his claims for prospective relief were too speculative. *Id.* at 104.  As the

Supreme Court explained, a plaintiff must show that he "has sustained or is immediately in danger of

sustaining some direct injury" as the result of the challenged conduct, and the injury or threat of injury

must be both "real and immediate," not "conjectural" or "hypothetical." *Id.* at 102.  "Past exposure to

illegal conduct does not in itself show a present case or controversy regarding injunctive relief. . . if

unaccompanied by any continuing, present adverse effects." *Id.*  Past wrongs, however, are evidence

bearing on whether there is a real and immediate threat of repeated injury. *Id.*

The Court determined that to satisfy the "injury in fact" requirement, petitioner would have to

show that he would be stopped again and subjected to a chokehold without provocation or that all police

officers in Los Angeles used chokeholds in routine traffic stops. *Id.* at 105–06. The Court concluded that

the likelihood that the petitioner would again be stopped and subjected to a chokehold was too

attenuated and did not present the immediate threat of repeated injury required to establish standing. *Id.*

at 109.  The Court also found that, for the same reasons petitioner could not establish standing,

petitioner's claim for injunctive relief would also fail because the likelihood of substantial and

immediate irreparable injury is a basic requirement for the issuance of an injunction. *Id.* Thus, petitioner

was unable to show that he was realistically threatened by a repetition of his experience and therefore

did not have standing to pursue injunctive relief. *Id.*

NCL relies on *Lyons* for the proposition that Plaintiffs cannot demonstrate a real and immediate

threat of repeated injury because they have only expressed indefinite future intentions of taking another

cruise, and they therefore do not meet the "injury in fact" requirement.  However, the facts at issue in

this case are distinguishable from *Lyons*.  While the past discrimination may not, in and of itself, be

sufficient for these Plaintiffs to establish standing, Plaintiffs have established ongoing policies and

practices by NCL which may violate the ADA.  Unlike the petitioner in *Lyons*, there is a real threat that

if Plaintiffs were to take another NCL cruise the same conditions would exist.  *See id.* at 107 n.8 ("It is

the *reality* of the threat of repeated injury that is relevant to the standing inquiry).

In *Lyons*, the possibility of repeated injury was highly attenuated in that the petitioner would

need to have another encounter with the police and demonstrate that all L.A.P.D. officers always used

chokeholds in non-deadly situations or the City authorized them to act in that manner, *id.* at 105–06,

whereas the Plaintiffs here may likely face repeated injury merely by making reservations on a NCL

ship. *See id.* at 104 (contrasting the "relatively few instances of violations by individual police officers"

versus a "showing of a deliberate policy on behalf of the defendants").  Plaintiffs have demonstrated that

NCL has company-wide policies that are applicable to each of its ships and its handling of disabled

persons across the board, and there is no evidence that NCL has changed its policies or that its policies

differ from ship to ship or as to each passenger.  Therefore, Plaintiffs face a real and immediate threat

that the unlawful conduct would occur again should they take another NCL cruise.

The Supreme Court also addressed standing in a situation where the petitioner's actions largely

dictated their potential for future injury.  In *Lujan v. Defenders of Wildlife*, 504 U.S. 553 (1992), the

Court held that organizations dedicated to wildlife conservation lacked standing to seek an injunction

against the Secretary of the Interior to restore its interpretation of § 7(a)(2) of the Endangered Species

Act to apply to actions taken in foreign nations that threatened endangered animals. *Id.* at 559, 562.

Specifically, the Court found the organization did not raise sufficient evidence to show "injury in fact"

and redressability. *Id.* at 562.  Certain members of the organization stated they had visited the foreign

locations and saw endangered animals in the locations where the projects abroad now threatened wildlife

and that they intended on returning in the future. *Id.* at 563–64.  The Supreme Court held the "some day

intentions" of the members of the organization were not sufficient to support a finding of the "actual or

imminent" injury that is required to establish standing. *Id.* at 564.

     NCL argues like the petitioners in *Lujan*, the Plaintiffs general intentions to take another cruise

are insufficient to meet the "injury in fact" requirement. However, this case is also distinguishable from

Plaintiffs' claims.  In *Lujan*, the petitioners had visited the wildlife preserves once or twice within the

previous decade and had no intentions of visiting the wildlife preserves in the near future. Unlike the

petitioners in *Lujan*, the Plaintiffs are not required to travel around the world to face the threatened

injury.  Moreover, it is not unreasonable to believe or unlikely that Plaintiffs will take another cruise in

the near future.  Mr. Spector has searched various websites for cruises he would be interested in taking

and has taken a Carnival cruise since the filing of this case.[12]  Ana Spector also has traveled often both

---

[12]  D.'s M.S.J. (dkt. #83), Ex. D, p. 81 (considering a specific Royal Caribbean cruise out
of Galveston that goes to Grand Cayman, Cancun and Key West); *see also id.* at p. 145 (stating
he took a four-day cruise out of Galveston in 2001).

before and after her husband became disabled.[13]  David Killough testified in his deposition that he has

taken several day cruises since the commencement of this lawsuit,[14] and Julia Hollenbeck also indicated

that she planned to take more cruises, but did not have any immediate plans.[15]  The court will not equate

travelers who have shown sincere intentions to take cruises and have done so in the past with the 'some

day' intentions to visit endangered species halfway around the world that the Supreme Court found was

insufficient to show injury in fact. *Id.*

Further, the statute itself belies NCL's argument that Plaintiffs need to have definite plans to take

another cruise before they can establish standing.  The enforcement provision of the ADA contemplates

that Plaintiffs need not subject themselves to discrimination if they already have a reasonable belief that

discrimination will occur.  In this regard, the ADA provides: "Nothing in [the remedies section] shall

require a person with a disability to engage in a futile gesture if such person has actual notice that a

person or organization covered by [the ADA] does not intend to comply with its provisions."  42 U.S.C.

§ 12188(a)(1). The ADA both requires and expects that Plaintiffs allege future intentions to take another

cruise, but it does not require that Plaintiffs continually subject themselves to discrimination to establish

standing.

Plaintiffs' standing to seek injunctive relief is further bolstered by the fact that injunctive relief

is the only available remedy for a private plaintiff under Title III of the ADA. 42 U.S.C. § 12188(a)(1);

*see Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002) (explaining remedies

under 42 U.S.C. § 12188(a) provide only those remedies available to individuals as set forth in 42

---

[13] *Id.* Ex. E (stating she took one cruise previously and has taken overnight trips with her husband more recently).

[14] *Id.* Ex. F, p. 141.

[15] *Id.* Ex. G, p. 13.

U.S.C. § 2000a-3(a), which allows only injunctive relief for violations of Title II of the Civil Rights Act of 1964).   The Plaintiffs, thus, have no other adequate remedy at law to remedy the alleged discrimination. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (noting that petitioner could not meet the standing requirement for injunctive relief because he had an adequate remedy at law, namely monetary damages in his civil rights action against the L.A.P.D.).

At the time Plaintiffs filed their Complaint, the facts existing at that time indicated that NCL had, and still has, in place general policies that may discriminate on the basis of disability supporting Plaintiffs' Non-Physical Barrier Claims.  Plaintiffs have each individually sustained an alleged injury and would be directly threatened with repeated injury should they purchase another cruise.  Plaintiffs have established the requisite "case and controversy" between themselves and NCL. Accordingly, the court finds that Plaintiffs have met their burden and established standing to seek injunctive relief based on the likelihood that they would suffer future injury from NCL's alleged discriminatory policies and the lack of other remedies at law.

## II.     Mootness

NCL maintains that the Plaintiffs' suit is now moot because the two ships, the *Sea* and the *Star*, made the basis of this lawsuit are no longer owned and operated by NCL.  A case is moot if the issues presented are no longer "live."  *AT&T Comms. of Sw. v. City of Austin*, 235 F.3d 241, 243 (5th Cir. 2000).  NCL argues that by its voluntary sale of the two ships on which Plaintiffs sailed there is no longer a justiciable case or controversy at issue for the court to decide.  However, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice (citations omitted). [I]f it did, the courts would be compelled to leave the defendant free to return to his old ways." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*,

13

528 U.S. 167, 189 (2000).  The standard used to determine whether a case has been mooted by the

defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it

absolutely clear that the allegedly wrongful behavior could not be expected to recur."  *Id.*  The heavy

burden of persuading the court that the challenged conduct has permanently ceased lies with the party

asserting mootness. *Id.*

     The argument posed by NCL was presented to the Supreme Court in *Laidlaw* in a different

factual context where environmental groups brought an action against a wastewater treatment plant

pursuant to the citizen-suit provision of the Clean Water Act.  The defendant, Laidlaw, argued that the

action had become moot because it had come into compliance with the regulatory requirements and had

shut down the polluting facility made the basis of plaintiffs' lawsuit. *Id.*  The Court found the facility

closure, however, did not make the plaintiffs' claims moot because Laidlaw still retained its operation

permit and could at any time resume its illegal practices. *Id.* at 194–95.

     Similarly, the singular fact that NCL has sold the *Sea* and the *Star* cruise ships does not

necessarily mean that its alleged illegal practices have ceased.  This court has previously ruled that

Plaintiffs' claims are not ship specific, but rather relate to NCL's general company-wide policies.  Thus,

the sale of the ships does not  moot the case because this event has not "irrevocably eradicated the

effects of the alleged violation." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  The Plaintiffs

have also presented evidence that demonstrates that NCL and its parent company, Star Cruises, routinely

re-route ships within their greater fleet, and the mobility of the cruise ships makes it possible that these

particular ships may re-enter the NCL fleet.[16]  Star Cruises has sent ships from its fleet when necessary

----

[16]  P.'s Resp. (dkt. #83), Ex. D (4) NCL March 17, 2004 announcement regarding the transfer of the *Sea* to Star Cruises.  ("This move once again demonstrates the advantage of having a diverse fleet in two divergent markets that can be strategically redeployed as part of an

to NCL;[17] thus, there is no guarantee the *Sea* or the *Star* will not end up back with NCL.  Because the

court finds that the alleged discriminatory policies are applicable to all of NCL's fleet and the *Sea* and

the *Star* are not necessarily permanently removed from NCL's fleet, the Plaintiffs' claims are not moot.

Therefore, Plaintiffs have presented sufficient evidence regarding the policies and practices of NCL to

survive summary judgment on the issues of standing and mootness.

### Conclusion

For these reasons, the court finds that Plaintiffs have established standing to pursue their claims

and have adequately alleged discrimination in NCL's policies and practices such that the sale of the *Sea*

and the *Star* do not make Plaintiffs' claims moot.  Therefore, NCL's Motion for Summary Judgment

(dkt. #73) is DENIED.

It is so ORDERED.

SIGNED on this 28th day of September, 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE

---

ever-changing global marketplace.").

[17] *Id.* Ex. D(5) NCL January 21, 2004 announcement ("Star Cruises' ship Superstar Leo will spend this summer in Alaska as part of NCL's popular Alaska Inside Passage program" in order "to support NCL at a difficult time when they have had the delivery of their newest ship seriously delayed.").